IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BERNADETTE MITCHELL, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 00-JEO-1584-NE |
| SHAW INDUSTRIES, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

In this action, plaintiff Bernadette Mitchell ("Mitchell" or "the plaintiff"), a former employee of Shaw Industries, Inc. ("Shaw" or "the defendant"), asserts various claims against Shaw, including that the defendant (1) subjected her to a hostile work environment through sexual harassment; (2) discriminated against her based on race; (3) discharged her in retaliation because of her complaints of sexual harassment; and (4) was negligent and/or wanton and malicious in the training, supervision, and retention of its employees and officers. Presently before the court is the defendant's motion for summary judgment. (Doc. 18).[1]

**I. BACKGROUND**

Shaw operates a carpet manufacturing plant in Stevenson, Alabama. Shaw hired Mitchell, an African-American female, in July 1996, as a Spinner Doffer, a position in which the plaintiff operated spinning machines used in the manufacturing of carpet. (Doc. 1 at ¶ 6). Mitchell performed her job in a satisfactory manner and became a mentor for newly hired employees. (*Id.* at ¶ 7).

Prior to October 1998, Mitchell complained several times to her supervisor, Donald

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court.

Wilson ("Wilson") regarding a co-worker, Shaun Free ("Free"), whom she claims harassed her. (Affidavit of Donald Wilson ("Wilson Aff.") at ¶ 5).[2] The complaints against Free included allegations that Free stole one of her cleaning brushes, that he reset the hour clock in her area, stole her cigarettes, and made faces at her. (*Id.*). At the time the complaints were lodged, Mitchell gave no indication that she felt the incidents had a racial or sexual basis. (*Id.* at ¶ 6).

On October 23, 1998, Mitchell's husband and her brother, Milton Reid ("Reid"), entered the Shaw employee parking lot and confronted Free. (Affidavit of James Seale ("Seale Aff.") at ¶ 3).[3] Reid told Free to leave Mitchell alone and threatened Free with severe physical harm, using obscene and abusive language.[4] (Affidavit of Shaun Free ("Free Aff.") at ¶ 4).[5] Free was fearful for his safety. (*Id.*). Although no injury occurred during the course of the incident, James Seale, the Human Resources Manager, began an investigation because a threat of violence had been introduced into the workplace. (Seale Aff. at ¶¶ 2 & 4). Seale requested and received assistance for the investigation from Shaw's Divisional Human Resources Manager, Al Scruggs. (Affidavit of Al Scruggs ("Scruggs Aff.") at ¶¶ 3 & 4).[6]

On October 27, 1998, Free drove a "pull cat," a machine used to deliver materials, near

---

[2] Wilson's affidavit is found at document 18 at exhibit 4.

[3] Seale's affidavit is found at document 18 at exhibit 2.

[4] The accounts of what occurred were consistent: Mitchell and her husband approached Free. Her husband was going to talk with Free about his treatment of Mitchell. He told Free not to be "f - - king with his wife." About that time, Mitchell's brother drove up and told Free "that he would f- -k him up, that he was not afraid of Christ himself and that if he had to come back he would kill him." (Doc. 18, Ex. 3A (Free Statement)). As best this court can discern from Mitchell's statement during the altercation, it was sparked, in part, because Free took her cigarettes. (*Id.*). According to the witnesses, Mitchell's brother's statements were vulgar and threatening. (Doc. 18, Ex. 3A (Troutman Statement & Allison Statement)). Wilson also witnessed the event and was concerned enough to request that another employee call the police. (Doc. 18, Ex. 3A (Wilson Statement)).

[5] Free's affidavit is found at document 18 at exhibit 3.

[6] Scruggs's affidavit is found at document 18 at exhibit 9.

2

Mitchell's work area. (Free Aff. at ¶ 5). The "pull cat" struck Mitchell, instigating a dispute between Mitchell and Free. (Mitchell Depo. at 188).[7] After sending Mitchell home, Seale and Scruggs began another investigation to learn the details of this incident. (Aff. of Seale at ¶ 6; Aff. of Scruggs at ¶ 6).

According to eye witness accounts, Mitchell intentionally walked into the side of the "pull cat," causing Free to strike her. The incident was witnessed by Wilson and co-employees Rayford Poe and Sherry Morgan. (Free Aff. at ¶ 5; Wilson Aff. at ¶ 10; Rayford Poe Affidavit ("Poe Aff.") at ¶ 3;[8] Sherry Morgan Affidavit ("Morgan Aff.") at ¶ 3[9]).

Free states that he was driving "the machine down the middle of the aisle when Mrs. Mitchell walked into the side." (Free Aff. at ¶ 5). He further states that he did not see her, he "did not swerve or in any way deliberately try to hit" her. (*Id.*). Mitchell testified at her deposition that "Sean run [sic] into me. But much to my surprise, it appeared to be set up that way." (Mitchell's Depo. at 235).[10]

Wilson stated that after the first incident (involving Mitchell's family coming to the plant), Seale instructed him "to spend more time in this area to investigate the problems between Mr. Free and Mrs. Mitchell." (Wilson Aff. at ¶ 10). On October 27, 1998, he observed Mitchell watching Free, walk toward him, and then "run into the side of the pull cat machine." (*Id.*). Mitchell then went to him and complained that the incident was Free's fault. (*Id.*). Wilson stated

---

[7] Mitchell's deposition excerpts are found at document 18 at exhibit 5 and at document 22 at exhibit C.

[8] Poe's affidavit is found at document 18 at exhibit 8.

[9] Morgan's affidavit is found at document 18 at exhibit 6.

[10] Excerpts from Mitchell's deposition are found at document 22 at exhibit C.

3

that "it was [his] strong belief that Mrs. Mitchell actually instigated this confrontation." (*Id.*). Poe stated that he saw Free coming, that the plaintiff looked at Free, and "walk[ed] straight into the side of the pull cat." (Poe Aff. at ¶ 3). He believed that it was clear that she made contact with the machine on purpose. (*Id.*). He also told Wilson what he observed and his opinion concerning the event. (*Id.*). Morgan stated that she saw Mitchell "intentionally walk[ ] into the pull cat because she was looking directly at the pull cat as she walked several yards toward the machine, eventually walking straight into it." (Morgan Aff. at 3). She also told Wilson of her impressions. (*Id.*).

On October 28, 1998, Seale asked Mitchell to come to the plant to discuss the events of October 23, 1998. Mitchell received a final written warning that if she violated any company policies within the next 90 days, she would be terminated. (Final Warning).[11] Mitchell responded on the written warning, stating that "[she was] not responsible for [her] brothers (sic) or husbands (sic) actions." (*Id.*).

On October 28, 1998, after being sent home by Seale, Mitchell sent a letter to Shaw's Regional Office in Dalton, Georgia, addressed simply "To whom this complaint concerns," complaining of harassment in the workplace, specifically citing to the incidents with Free. (Mitchell Complaint Letter at 1).[12] In the letter, Mitchell states that Free had been harassing her since March 1998. (*Id.*). She states that Free set her clock back, put cakes on her machine, stole from her, and did other unspecified things. (*Id.*). She also states in the letter that she had informed Wilson of her complaints. (*Id.*). The letter did not make any reference to Wilson's

---

[11] This document is found at document 22 at exhibit 2.

[12] This letter is found at document 18 at exhibit 10.

4

harassment of her or any reference that Free's harassment stemmed from her sex or race. (*Id.*).

In her deposition, Mitchell testified that Wilson made comments to her regarding her appearance, told her sexually explicit jokes, and subjected her to inappropriate touchings, including brushing against her breasts with his hand. (Mitchell Depo. at 94-95, 99-100, 110-11, 113-14, 127-28, 131-34).

Mitchell also testified that she knew of Shaw's corporate policy against sexual harassment since it had been communicated to her during her employee orientation meeting. (Mitchell Depo. at 81-82; Maynor Aff. at ¶ 3 and its attached Exhibit B).[13] Mitchell said she had been required to watch a video that explained sexual harassment and how it should be reported within the company. (Mitchell Depo. at 81-82). The Shaw policy makes employees responsible for telling the harassing party their conduct was offensive and requires that the employee report continued harassment either to a supervisor, the Human Resources Manager, or the Plant Manager. (Shaw Human Resources Policy Manual ("Policy Manual"), p. 3).[14]

At one point during her deposition, Mitchell recalled that Seale asked her into his office in order to discuss a matter involving two other employees. (Mitchell Depo. at 136). During this meeting, Mitchell tried to report the harassment to Seale, but he did not want to address her concerns because the dispute between the other employees had priority at that time. (*Id.* at 136). Mitchell discussed the harassment with Seale only "after [she] felt like they were going to fire [her] anyway." (*Id.* at 101-02). She did not report the harassment before this because she "needed [her] job very badly . . . . [and she] was afraid to report it." (*Id.* at 102).

---

[13] Maynor's affidavit is found at document 18 at exhibit 7.

[14] The policy is found at document 18 at exhibit 7B.

On November 6, 1998, Shaw terminated Mitchell for disruption of the work force and work environment. (Separation Notice/Exit Interview).[15] On November 9, 1998, Mitchell filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Shaw. She alleged that she had been subjected to ongoing harassment, including sexual and racial jokes by her superiors, which she reported continuously. (EEOC Charge).[16] In the complaint, Mitchell made claims of discrimination based on her race. She states that Free, a white male, had not been "placed on leave, denied compensation counselled [sic] or treated in a similar manner" after the above incidents. (*Id.*). The EEOC issued a right to sue letter. (Complaint at ¶ 2).

On January 1, 1999, Mitchell sent a letter to Shaw claiming that she was wrongfully denied her vacation pay for October 28, 1998, and November 1-4, 1998. There is no evidence in the file that Shaw ever responded to the plaintiff's letter or that she was entitled to or paid the vacation benefits.

Mitchell applied for unemployment compensation. She was initially denied the same because an Examiner found that she was disqualified from receiving benefits due to the fact that she was discharged for misconduct committed in connection with her work after a prior warning.[17] That decision was reversed by the Appeals Referee who found that the disqualification cited by the Examiner was not applicable because the evidence did not show that Mitchell "committed an act of misconduct as she was at her workstation and was struck by the

---

[15] This document is found at document 18 at exhibit 1.

[16] The EEOC charge is located at document 18 at exhibit 11.

[17] The applicable Alabama statute provides that an individual is ineligible for benefits "[i]f he was discharged for actual or threatened misconduct committed in connection with his work (other than acts [of dishonesty, a criminal nature, sabotage, or regarding safety or drugs]), repeated after previous warning to the individual. . . ." ALA. CODE § 25-4-78(3)b.

6

coworker. The evidence presented does not substantiate [that Mitchell] was discharged for an act of disqualification under the provisions of this section of the Law." (Doc. 22, Ex. 11 at 2).

On June 7, 2000, Mitchell filed suit in this court. (Doc. 1).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *See* FED. R. CIV. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party

need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the

drawing of inferences from the facts are the function of the jury and, therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from the undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods*, 121 F.3d 642 (11th Cir. 1997).

## III. DISCUSSION

### A. Mitchell's Claim of a Hostile Work Environment Due to Sexual Harassment

To establish a *prima facie* case of hostile work environment sexual harassment, the plaintiff must show that the harassment affected a "term, condition, or privilege" of employment because it was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir. 1987). In *Gupta v. Florida Board of Regents*, 212 F.3d 571 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076, 121 S. Ct. 772, 148 L. Ed. 2d 671 (2001), the court set forth the standards that must be met for an employee to succeed on such a claim. These standards require the employee to show that (1) the employee belongs to a protected group; (2) the employee has been subjected to unwelcome sexual harassment; (3) the harassment was based on the sex of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there is a basis for holding the employer liable. *Williams v. Motorola, Inc.*, ___ F.3d ___, 2002 WL 1987650 (11th Cir. 2002); *Gupta*, 212 F.3d at 582; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245-46 (11th Cir. 1999) (en banc), *cert. denied*,

9

529 U.S. 1068, 120 S. Ct. 1674, 146 L. Ed. 2d 483 (2000). By "[r]equiring the plaintiff to prove that the harassment is so severe or pervasive" the court was trying to prevent Title VII from becoming a "general civility code." *Gupta*, 212 F.3d at 583, *quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998). "Harassment is severe or pervasive for Title VII purposes only if it is *both* subjectively and objectively severe and pervasive." *Johnson v. Booker T. Washington Broadcasting Srv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000); *Mendoza*, 195 F.3d at 1246 (emphasis added). Objectively determining whether an employee's terms or conditions of employment were affected by the statements and conduct complained of requires an examination of (1) the frequency of the conduct; (2) its severity; (3) whether it was physically threatening or humiliating or merely an offensive utterance; and (4) whether it unreasonably interfered with the employee's job performance. *Gupta*, 212 F.3d at 584; *Mendoza*, 195 F.3d at 1246.

Mitchell testified in her deposition to eight specific instances of sexual harassment. The eight instances include four sexually explicit jokes; two comments that complimented Mitchell on her appearance; an incident in which her supervisor, Wilson, brushed up against her; and one incident in which Wilson brushed his hand against Mitchell's chest in an effort to wipe something off of her shirt.

Mitchell is part of a protected class and she has demonstrated that the alleged harassment was unwelcome. Although the jokes that Mitchell recalled in her deposition may not have been told to her based solely on her sex,[18] the remarks (jokes and compliments) made by Wilson must be construed as being based on Mitchell's sex. Similarly, the touching would also be based on

---

[18] The record includes the content of the jokes. (Mitchell Depo. at 94-95, 99-100, 110-11, 127).

her sex.

The plaintiff, however, has not demonstrated that the harassment was sufficiently severe and pervasive so as to alter the terms and conditions of employment. As already noted, the harassment must be viewed both subjectively and objectively as severe and pervasive. Therefore, while Mitchell may have felt that Wilson's conduct "crossed the proverbial line," it may not be objectively sufficient to overcome the motion for summary judgment. *Gupta*, 212 F.3d at 585. Although Mitchell testified in her deposition to eight instances of harassment, she stated that "it was a continuous, it was a constant thing" because she had to see Wilson every day. (Mitchell Depo. at 89, 114). Mitchell could not state with accuracy the frequency of the harassment other than that it was continuous. As to severity, the standard established in *Gupta* is high. Wilson's conduct, including the touching, comments, and jokes were not appropriate for the work place. However, even though Mitchell found them to be severe and pervasive, they do not rise to the level of severity required by *Williams*, *Gupta*, and *Mendoza* to overcome the defendant's motion for summary judgment. Additionally, Mitchell has not alleged, much less demonstrated that her work suffered because of the harassing treatment. To the contrary, in her complaint she states that she performed so well she became a mentor for new employees. This court finds that the evidence is insufficient to support her hostile work environment claim. In so finding, the court is not suggesting that it approves or condones Wilson's conduct, but merely finds that it is legally insufficient under Eleventh Circuit standards.[19]

---

[19] The defendant also asserts that the plaintiff's sexual harassment claim is due to be dismissed because she failed to raise this claim in the EEOC charge. (Doc. 18 at ¶ 34). The plaintiff responds in her affidavit that the narrative portion of her EEOC charge includes a claim of sexual harassment. (Doc. 22, Ex. A).

It is well-settled that a Title VII plaintiff's complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir.), *cert. denied*, 513 U.S. 919, 115 S. Ct. 298, 130 L. Ed. 2d 212 (1994), *citing Sanchez v. Standard Brands, Inc.*, 431

**B. Mitchell's Claim of Retaliatory Discharge**

The plaintiff claims that Shaw retaliated against her because she made allegations and complaints of sexual harassment. The retaliation included her being disciplined and ultimately discharged. (Complaint at ¶¶ 25 and 27).[20] To establish a claim for retaliatory discharge, the plaintiff must show (1) that she engaged in statutorily protected activity; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation in the protected activity and the adverse employment action. *Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir. 1997) (*citing Bigge v. Alberstons, Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990) (per curium)); *see also Williams*, 2002 WL 1987650. The plaintiff seeks to establish her retaliation claim using the indirect, burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). As established by the Supreme Court, the indirect, burden-shifting method requires the plaintiff to create an inference of

---

F.2d 455 (5th Cir. 1970); *Turner v. Orr*, 804 F.2d 1223, 1224 (11th Cir. 1986). It is also "well established that 'the scope of an EEOC complaint should not be strictly interpreted.'" *Sanchez*, 431 F.2d at 465. The claim presented in court must be "like or related" to the EEOC charge. *Turner*, 804 F.2d at 1226.

> The Eleventh Circuit Court of Appeals has stated:
>
> As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted . . ., "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."
>
> Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEOC complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.

*Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989), *citing Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980), *cert denied*, 450 U.S. 997, 101 S. Ct. 1701, 68 L. Ed. 2d 198 (1981), *quoting Sanchez*.

The defendant is correct that the EEOC charge does not specifically list sex discrimination as a cause of action in the area that the complaining party is allowed to check. However the text of the section concerning the "[p]articulars" does state that she had "been subjected to sexual and racial jokes. . . ." (Doc. 18, Ex. 11). Under the circumstances herein, the court finds that the sexual harassment claim before the court is reasonably related to the EEOC charge and the EEOC investigation.

[20] The complaint is found at document 1.

12

retaliatory intent by showing a *prima facie* case of retaliation. *Id.* at 802 n.13. If she presents a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *Id.* at 802. The Eleventh Circuit has explained that this burden of articulating a legitimate, non-discriminatory reason is "exceedingly light." *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994). The defendant is not required to establish the legitimate, non-discriminatory reason, but only to offer evidence articulating it, for the ultimate burden of establishing intentional discrimination remains at all times with the plaintiff. *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 & 511, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993). After the defendant has asserted its legitimate, non-discriminatory reason for its actions, the plaintiff has an opportunity to show that the defendant's articulated reason was merely pretextual and that the defendant acted with retaliatory intent. *McDonnell Douglas*, 411 U.S. at 803.

Mitchell's reporting of the sexual harassment to Seale at the time of her termination and in her letter of October 28, 1998, to the corporate headquarters satisfies the first element needed to establish her prima facie claim. Also, there can be no dispute that an adverse employment action occurred since Mitchell was terminated from Shaw's employ. However, viewing the facts in a light most favorable to the non-movant, the evidence does not support a conclusion that there is a causal link between the participation in the protected activity and the adverse employment action.

Assuming for the sake of further discussion that Mitchell has established a *prima facie* case, the defendant has asserted a legitimate, non-discriminatory reason for Mitchell's termination. Specifically, Shaw asserts that Mitchell was terminated for disrupting the work

environment by allowing her husband and brother to enter the Shaw property and threaten Free, and also by causing the accident with Free while he was driving the "pull cat." Shaw insists that these legitimate, non-discriminatory, business reasons led to her termination. In view of these assertions by Shaw, Mitchell must now demonstrate that the reason asserted is merely pretextual in order to cover up the retaliation.

Mitchell could not recall having told Wilson that his behavior was offensive to her. Mitchell's delay in reporting this harassment does not support a conclusion of a causal link between the two incidents. In her deposition, Mitchell could recall only twice having tried to report the sexual harassment to Seale, once during a meeting with him concerning the conduct of two other employees and when she believed that she was going to be terminated anyway. Furthermore, her letter of October 28, 1998, was sent only after she had been disciplined on other grounds. There is no evidence that Seale was aware of her letter at the time he terminated Mitchell.[21] This evidence is insufficient to counter Shaw's legitimate reason for her termination.

### C. Mitchell's Claim of Racial Discrimination

The plaintiff next claims that she was subjected to race discrimination in her termination because she was not treated like Free, a similarly situated white employee. The plaintiff must demonstrate with regard to this claim that the defendant acted with a discriminatory purpose. The Supreme Court has stated unequivocally that "[p]roof of discriminatory motive is critical" in a disparate treatment case. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-36 n.15, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977). *See also United States Postal Serv. Bd. of*

---

[21] Additionally, there is no evidence that Wilson, or any other person in the decision-making process, was aware of the letter.

*Governors v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983); *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 528-29 (11th Cir. 1983). The plaintiff may establish a *prima facie* case creating a rebuttable presumption of discriminatory intent through (1) direct evidence of discriminatory intent; (2) statistical proof of discrimination; or (3) the indirect, burden-shifting method set out in *McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff does not present direct or statistical evidence.

To establish a prima facie case of racial discrimination, the plaintiff must show (1) that she was a member of a protected class; (2) that she was qualified for the position at issue; (3) that an adverse employment action was taken against her; and (4) that the employer treated similarly situated employees outside the protected class more favorably. *Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309 (11th Cir. 1999); *See, e.g., Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir.), *superseded in part*, 151 F.3d 1321 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

Mitchell easily establishes the first three elements of her *prima facie* case in that (1) she is African-American and as such is a member of a protected class; (2) there is no dispute as to her qualifications; and (3) she was subject to an adverse employment decision when terminated by Shaw. Whether the plaintiff has established her prima facie case is decided by the last element, whether similarly situated, non-minority employees were treated differently. The plaintiff argues that Free, a white male, is a similarly situated employee who was treated differently.

The evidence does not support a conclusion that Free is a similarly situated employee.

Free was certainly involved in both instances. However, he clearly was a victim in the October 23, 1998 altercation. Additionally, the witnesses to the events of October 27, 1998, Wilson, Poe, and Morgan state that Mitchell initiated the incident with the "pull cat."

Even if Mitchell established a *prima facie* case, she has not sufficiently challenged the defendant's proffered reason for her termination to overcome the defendant's motion for summary judgment. Shaw countered Mitchell's claim by asserting that Mitchell was terminated for disrupting the work environment by allowing her husband and brother to enter the Shaw property and threaten Free, and also by causing the accident with Free while he was driving the "pull cat." In *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998), the court stated:

> When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted). The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Sheridan,* 100 F.3d at 1072 (citation and internal quotation marks omitted); *see also Walker,* 53 F.3d at 1564 (Johnson, J., concurring) (discussing methods of proving pretext). However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable.

The plaintiff has not offered "such weaknesses, implausibilities, inconsistencies, incoherencies,

or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.*

Mitchell asserts that the defendant's reasons are called into question by the fact that Free was not sent home from work while the incident involving the "pull cat" was under investigation. The court does not find this fact to be sufficient to overcome the defendant's motion. Mitchell and Free are distinguishable for the reasons stated above. Free was the recipient of the assaultive behavior from Mitchell's husband and brother. Additionally, at the time of the incident with the "pull cat," the plaintiff had already been associated with one incident leading to the introduction of violence in the workplace. These distinguishing facts are sufficient to justify the differential treatment afforded Free.

### D. Negligent and/or Wanton and Malicious Training, Supervision, and Retention

Mitchell has not filed anything in opposition to the defendant's motion for summary judgment on her claim of negligent and/or wanton and malicious training, supervision, and retention (count four). Thus, the court finds that the plaintiff has abandoned these claims. *Smith v. International Paper Co.*, 160 F. Supp. 2d 1335, 1347 (M.D. Ala. 2001) (*citing Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995)). The defendant's motion for summary judgment as to this claim is due to be granted and the claims are due to be dismissed.

The court further finds that the claims are due to be dismissed on the merits on the defendant's motion for summary judgment. The plaintiff alleges in her complaint that the defendant was negligent in supervising, training, and retaining its employees and officers. (Complaint at ¶ 38). In support of these claims, she states that the defendant was negligent in

failing to properly investigate her claims of sexual harassment and take appropriate action. (*Id.* at ¶ 39). She further states that the defendant acted improperly in "retaining Wilson, Free and other employees who engaged in harassing and discriminatory conduct." (*Id.* at ¶ 40).

The defendant asserts that this claim is due to be dismissed on summary judgment because (1) there is no evidence that Shaw had any knowledge of facts that would preclude the hiring of Wilson, (2) he was adequately trained, and (3) Shaw had no knowledge of any problem with Wilson until the termination. (Doc. 18 at 22-23).

The court in *Kelley v. Worley*, 29 F. Supp. 2d 1304, 1313 (M.D. Ala. 1998), recently stated as follows concerning negligent hiring, retention, and supervision claims:

> The Alabama Supreme Court has stated that in the context of a master and servant relationship, such as that between the corporate Defendants and [the employee], "the master is held responsible for the servant's incompetency when notice or knowledge, either actual or presumed, of the incompetency has been brought to the master." *See Mardis v. Robbins Tire & Rubber Co.,* 669 So. 2d 885, 889 (Ala. 1995). For the master to be held liable for the servant's incompetency, it must be affirmatively shown that had the master exercised due and proper diligence, the master would have learned of the incompetency. *Id.* This may be done by showing specific acts of incompetency and showing that they were brought to the knowledge of the master, or by showing them to be of such a nature, character, and frequency that the master, in the exercise of due care, must have had notice of them. *Id.*

In the present matter, the evidence is not sufficient to show that Wilson and Free were negligently and wantonly trained, supervised, or retained. First, the plaintiff does not allege, and the record does not demonstrate, any deficiencies in the policies, procedures, and training used by the defendant to combat harassment. Accordingly, the negligent and wanton training claims must fail. Second, the only indication of problems related to sexual harassment with Wilson was when Mitchell attempted to discuss the situation with Seale during an interview regarding

another matter. His comment that "that's not what [she] was in the office to discuss" is not such that she should have been inhibited from advancing her complaint pursuant to the company's "Anti-Harassment Policy." (Mitchell Depo. at 136). She did not complain to anyone else at any time until when she determined that Seale was going to terminate her.[22] At that point, she complained about Wilson's actions to Seale. The court does not find that to be sufficient notice under the circumstances for a jury to impose liability on the defendant for negligent or wanton supervision or retention of Wilson or Free.

## IV. CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is due to be granted. An appropriate order will be entered.

**DONE**, this the ___ day of October, 2002.

JOHN E. OTT
United States Magistrate Judge

---

[22] Under the defendant's policy, she could have complained to her department manager or the plant manager if she was not satisfied with Seale's lack of interest at that moment. (Doc. 22, Ex. 8). It also provides, "If you are uncomfortable talking to managers in this facility, please contact our Division Human Resources Director." (*Id.*). However, there is no evidence she followed the directions in the Shaw policy.